(42 Misc. Rep. 440.)

SHERMAN LIME CO. v. VILLAGE OF GLENS FALLS.

(Supreme Court, Special Term, Warren County.   January, 1904.)

1. DEDICATION—EVIDENCE—SEWERAGE PRIVILEGES.

Where owners of land, containing a ledge in which there was a natural fissure running underground to a river, for 10 years allowed a village to construct an outlet for a sewer system over their lands to the fissure, and erect a brick building to make the proper connections, they have dedicated to that extent their lands to the public use.

2. INJUNCTION—NUISANCE.

Owners of lands dedicated to the use of a village the right to construct a sewage system to a natural fissure in a ledge of rocks, flowing underground to a river.   Thereafter, because of increased sewage, the village constructed an overflow pipe to conduct the surplus to the river by an open ditch in said lands, which at times overflowed.   *Held* to entitle the owner of the lands to an injunction restraining the further discharge of sewage upon his lands otherwise than in the manner allowed by the original system, and only in connection with the fissure.

Action by the Sherman Lime Company against the Village of Glens Falls to require defendant to remove sewage from lands of plaintiff, and to enjoin a future discharge thereof.   Judgment for plaintiff.

Potter & Kellogg, for plaintiff.

Wm. M. Cameron (F. A. Rowe and C. R. Patterson, of counsel), for defendant.

SPENCER, J.   The plaintiff is the owner of a strip of land in the village of Glens Falls, lying between the Hudson river and Warren street, containing an extensive ledge of valuable lime rock, which the plaintiff has used and is still using in the manufacture of lime.   There is a fissure in the rock about a thousand feet from the river bank, running from the surface underground to some point in the bed of the river.   This fissure, for a long time, has been used as a sinkhole to carry away surface water and to drain certain dry docks situated in the neighborhood.

In the years 1891 and 1892 the defendant, by its board of sewer commissioners, planned and constructed a system of sewers for the use of the public in said village. Darwin W. Sherman, the principal owner of the property in question, was chairman of said board, and took an active part in its proceedings. At his suggestion, and with the knowledge and concurrence of the other owners of the property, the outlet line of the sewer system was constructed from a point on Warren street across said property to and into the opening of said fissure, where a substantial and permanent building of brick was erected for the purpose of connecting the sewer pipes with said fissure. The village sewage thus found its way through the pipes into the fissure and thereby into the river. Since that time the defendant has, from year to year, increased its sewer system by adding to the area drained thereby, and has thus continually added to the amount of sewage necessary to be disposed of through the fissure. In the year 1897 the fissure, either by becoming clogged or by being too small for the increased flow of sewage, or both, failed to carry off all the sewage gathered by the system, and the same overflowed and spread over plaintiff's lands. In order to regulate this, the defendant constructed an overflow pipe at or near the brick structure, by which such surplus was conducted across the lands of the plaintiff in an open ditch to the river. From that time to the present more or less sewage has continued to run through the overflow pipe and along the ditch, but on occasions these are inadequate and the sewage spreads over the adjacent lands. The plaintiff contends that all that the defendant has done in respect to the discharge of its sewage by means of the fissure and over its lands has been done under a license which has expired by revocation, and this action is brought to recover damages for the injury to said premises caused by the overflow of the sewage, and for judgment directing the defendant to remove its sewer pipes and sewage from said premises, and for an injunction restraining their further use.

As to the institution of the sewer system and the appropriation and use of the fissure as an outlet to such system, I cannot agree with the plaintiff's contention. I am of the opinion that there was a dedication by the owners of the property to a public use. It appears without dispute that the sewage system was constructed with a view to the use of the fissure as its outlet, and everything points to the conclusion that its occupation for that purpose was intended to be permanent. I think, therefore, that the defendant has a right to occupy and maintain its sewer from Warren street across the premises of the plaintiff to the opening of the fissure, and to use said fissure for the purpose of carrying away such sewage to the extent of its capacity. The fissure is simply a natural extension of the artificial sewer, and constitutes a part of the system originally planned and constructed.

But I think there was no dedication of the plaintiff's premises to any other or further use. The dedication of the fissure and the right to lay the sewer pipes to connect therewith did not contemplate any use of the premises beyond the capacity of the fissure as a continuation of the sewer. The construction of the overflow pipe came about in a different way. Its necessity was not contemplated at the time the owners of the property dedicated the use of the fissure and land for

sewer pipes to the public use.   Its necessity resulted from the enlarge-
ment of the defendant's sewer system, demanding an outlet of larger
capacity, or because the fissure had been allowed to become clogged
or its usefulness as an outlet impaired.   The dedication went no further
than the use of the fissure to the extent to which it might be employed,
and did not included the right to otherwise use the plaintiff's premises
for an outlet in case the fissure, for any reason, became insufficient.
The allowance by the plaintiff of the construction of the overflow pipe
was, to a very great extent, imposed upon it by the exigencies of the
situation and the necessities of the defendant, and was not a voluntary
and intentional dedication of its property to the public use.   When by
the growth of the defendant's sewer system it became necessary to
provide for an increased outlet, the defendant was bound to look else-
where, and could not by virtue of its necessities impose upon the plain-
tiff the obligation to enlarge its dedication.   I am therefore of the opin-
ion that the defendant has no right to maintain the overflow pipe or to
discharge by that means, or in any other manner, its surplus sewage
upon the premises of the plaintiff, and that the maintenance of such
overflow pipe, since notice to discontinue the same was given, has been
in violation of the plaintiff's rights.   The same rule applies to any use
of the plaintiff's premises, except the use of said fissure and the pipes
leading thereto, and reasonable opportunity to repair and maintain
the same from time to time as planned and constructed.

As to the question of damage, the testimony is very conflicting.
The plaintiff contends that its limestone is exceedingly porous, and
that sewage matter has been absorbed by it to such an extent as to de-
stroy its usefulness for the purpose of manufacturing lime.   I think
much of this claim rests upon the sheerest speculation.   It is simply
beyond belief that limestone can, to any extent, be permanently in-
jured by the flow of sewage over it.   Any deposits which may result
therefrom may be removed by very simple and inexpensive methods.
There can be no doubt that the plaintiff has been discommoded and suf-
fered loss from the presence of sewage flowing over the quarry, and
that it will be put to expense in removing the deposits.   As to all such
loss and expense it should be fully compensated, but I am strongly of
the opinion that when such deposits are removed the stone will be as
serviceable as ever.   I have carefully examined the views of the sev-
eral witnesses in respect to the injury, and have come to the conclu-
sion that the sum of $1,000 will fully compensate the plaintiff for the
loss which it has thus far sustained.

The plaintiff may have judgment for the removal of the overflow
pipe, and for damages caused by the loss and injury to its premises
in the sum stated, together with an injunction restraining the defend-
ant from further discharging its sewage upon the premises of the plain-
tiff, other than by the use of the fissure and sewer pipes leading there-
to, to which reference has been made.

Let findings of fact and conclusions of law be prepared in accordance
with the above, the same to be settled upon notice, when parties will be
heard as to the time the injunction order should take effect.   Costs to
plaintiff.   Judgment accordingly.